UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY REIMAN,

    Plaintiff,                                                   Case No.
                                                            Hon.

v.

INTERLOCHEN ARTS ACADEMY
a/k/a INTERLOCHEN CENTER OF THE ARTS,
a Michigan corporation,

    Defendant.
_____/
Megan Bonanni (P52079)
Pitt McGehee Palmer & Rivers, P.C.
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
(248) 398-9804 Fax
mbonanni@pittlawpc.com

_____/

**COMPLAINT AND DEMAND FOR JURY**

**GENERAL ALLEGATIONS**

       This is a proceeding to redress the deprivation of rights secured to the plaintiff Larry Reiman by Section VII(b), 29 U.S.C. §626(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et. seq. ("ADEA"). The jurisdiction of this court over this controversy is based on 28 U.S.C. §1337 to enforce the provisions of the ADEA.

       1.     Plaintiff Larry Reiman is a resident of Buckley, Michigan, County of Wexford.

       2.     Defendant Interlochen Academy is a Michigan corporation which has its principal place of business located and established and does substantial business in the Western District of Michigan.

1

3. All of the discriminatory employment practices alleged in this complaint occurred within the State of Michigan and within the Western District of the United States District Court of Michigan.

4. Plaintiff filed timely charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights alleging age discrimination against themselves and others similarly situated.

5. On March 26, 2014, the EEOC issued a right-to-sue letter. This action has been filed within 90 days of the receipt of the right-to-sue letter by the Plaintiff.

## STATEMENT OF FACTS

6. Larry Reiman, born on July 25, 1948, began his employment at Interlochen Academy in January, 2000.

7. At the time of his termination, Reiman was employed as an instructor within Interlochen's Theatre Arts Department where he taught various courses within The Theatre Arts Department.

8. Throughout his employment, Reiman's performance met his employer's expectations as evidenced by his fully satisfactory performance evaluations.

9. From January 2000 until June, 2011 Reiman worked under the supervision of Director of Theatre Arts Department David Montee (DOB 1953).

10. In June 2011, Montee, who served as Chair of Theatre Arts since 1990, was informed by Vice President Edward Faraday that he was being replaced by a younger subordinate, William Church (DOB 1970).

11. Montee was instructed to take a sabbatical for the 2011/12 school year. At the end of the sabbatical, Montee would return to Interlochen in the demoted position of

2

instructor reporting to Church.

12. Following his demotion, during his sabbatical, Montee's teaching duties were assumed by two younger Instructors, one of whom was a new hire and one who was a part time employee who was thereafter upgraded in status.

13. In Spring, 2011 soon before officially assuming Montee's duties, Church approached Reiman about when he planned to retire. Reiman explained that he had no plans to retire.

14. Again, in early Fall 2011 Church pressed Reiman to articulate whether he planned to retire. Reiman reiterated that he was not intending on retiring and further explained that his wife's numerous health conditions prohibited any retirement in the near future.

15. Two days later, an administrative assistant in the department, provided Reiman with the Interlochen policy describing health care benefits and stated, "when you leave here you will have health care."

16. Reiman was shocked at the comment of the assistant because Reiman had not expressed any intention of leaving his employment at Interlochen.

17. On December 16, 2011, Vice President Faraday informed Reiman that his contract not be renewed and his employment would terminate in May 2012.

18. Reiman asked for an explanation whereupon Faraday, reading from a prepared statement, indicated that Reiman's "performance was not up to the institution's standards of rising expectation."

19. When Reiman asked Faraday to explain what Faraday meant by "rising expectations," Faraday read the prepared statement again.

20. At no time during Reiman's employment was he ever informed that his performance was in any way deficient until receiving notice of termination.

21. Over the course of the following six months, from December 16, 2011 until May 27, 2012 Reiman continued to teach his scheduled courses.

22. Following Interlochen's decision not to renew Reiman's contract, over 1500 Interlochen students, parents, colleagues and alumni, hearing about the Reiman termination initiated and circulated a petition challenging his termination and requesting his rehire.

23. As a direct and proximate result of defendant's unlawful actions, Reiman has suffered, and will continue suffer, a loss of wages, benefits and other economic advantages of employment. In addition, Reiman has suffered, and will continue to suffer, emotional distress, humiliation, embarrassment and mental anguish resulting from his treatment by Interlochen.

<u>COUNT I</u>

<u>VIOLATION OF THE ADEA- TERMINATION</u>

24. Plaintiff incorporates by reference all the allegations contained above as though stated in full herein.

25. At all times relevant to this action, it was the duty of Defendant to refrain from discharging or otherwise discriminating against Plaintiff with respect to his employment because of his age.

26. In violation of this duty, Defendant considered Plaintiff's age in not renewing his contract and terminating him.

27. Interlochen engaged in a pattern and practice of age discrimination in the

4

manner in which it made its decision not to renew Reiman's employment.

28. At all times relevant to this action, the decision of Interlochen not to renew Reiman's contract and effectively terminate his employment was based on unlawful discrimination on account of his age in violation of the ADEA.

29. Plaintiff has suffered, and will continue to suffer, all the injuries and damages as set forth in the above Statement of Facts.

Accordingly, Plaintiff requests the following relief:

   A. An order of reinstatement to his former position or suitable alternative positions;

   B. An order of the court awarding Plaintiff back pay and other forms of economic compensation as permitted the ADEA;

   C. An order of the court awarding Plaintiff liquidated damages at two times his lost wages as provided for in the ADEA;

   D. An order of the court awarding Plaintiff interest, costs and attorney fees; and

   E. An order of the court awarding Plaintiff such other relief as this court deems just and equitable.

By: */s/ Megan A. Bonanni P52079*
Megan Bonanni (P52079)
Pitt McGehee Palmer & Rivers, P.C.
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
(248) 398-9804 Fax
mbonanni@pittlawpc.com

Dated: June 26, 2014

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY REIMAN,

    Plaintiff,   Case No.
                                          Hon.

v.

INTERLOCHEN ARTS ACADEMY,
a Michigan corporation,

    Defendant.
_____/
Megan Bonanni (P52079)
Pitt McGehee Palmer & Rivers, P.C.
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
(248) 398-9804 Fax
mbonanni@pittlawpc.com

_____/

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues to the within cause of action.

                              By: */s/ Megan A. Bonanni P52079*
                              Megan Bonanni (P52079)
                              Pitt McGehee Palmer & Rivers, P.C.
                              Attorney for Plaintiff
                              117 West Fourth Street, Suite 200
                              Royal Oak, MI 48067
                              (248) 398-9800
                              (248) 398-9804 Fax
                              mbonanni@pittlawpc.com

Dated:  June 26, 2014